UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:21-cv-308

KENNEY PROPERTIES, INC.,           )
KENNEY HOLDINGS, LLC,              )
KENNEY REALTY SERVICES,            )
LLC and GRESHAM PARK, LLC          )
d/b/a AUTUMN POINTE                )
APARTMENTS,                        )
                                   )          **COMPLAINT**
                    Plaintiffs,    )
                                   )
v.                                 )
                                   )
PHILADELPHIA INDEMNITY             )
INSURANCE COMPANY,                 )
                    Defendant.     )

Plaintiffs, Kenney Properties, Inc. ("Kenney Properties"), Kenney Holdings, LLC ("Kenney Holdings"), Kenney Realty Services, LLC ("Kenney Realty") and Gresham Park, LLC d/b/a Autumn Pointe Apartments ("Gresham Park"), collectively for their Complaint ("Plaintiffs"), against the Defendant Philadelphia Indemnity Insurance Company ("Defendant" or "Philadelphia Indemnity") alleges as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1.    This is an insurance coverage action by the policyholder named insured, Kenney Properties, pursuant to the policy, and three additional insureds, Kenney Holdings, Kenney Realty and Gresham Park, for breach of

the duty to defend and to indemnify in an underlying action as to the Plaintiff insureds pursuant to the policy terms, against their insurer, Philadelphia Indemnity.

2.     Plaintiffs seek a declaration of their rights pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201, and compensatory damages for a breach of Defendant's contractual duty to provide a defense and indemnity pursuant to the Defendant's insurance policies.

3.     Additionally, Plaintiffs seek treble damages from Philadelphia Indemnity pursuant to N.C. Gen. Stat. §75-1.1 *et sequa*, including for conduct violating the Unfair Claim Settlement Practices provisions in N.C. Gen. Stat. § 58-63-15(11), for Philadelphia Indemnity's inappropriate handling of the Plaintiffs' tender of the underlying action for a defense and as to indemnity.

## **PARTIES**

4.     Kenney Properties is a corporation organized under the laws of the State of North Carolina and with its principal place of business located in Raleigh, Wake County, North Carolina.

5.     Kenney Holdings is a limited liability company organized under the laws of the State of North Carolina, with a member/manager and its principal place of business located in Raleigh, Wake County, North Carolina.

4827-1872-8420

6. Kenney Realty is a limited liability company organized under the laws of the State of North Carolina, with a member/manager and its principal place of business located in Raleigh, Wake County, North Carolina.

7. Gresham Park is a limited liability company organized under the laws of the State of North Carolina, with a member/manager and its principal place of business located in Raleigh, Wake County, North Carolina.

8. Philadelphia Indemnity is a foreign insurance company domiciled in Pennsylvania and with its principal place of business located in Philadelphia, Pennsylvania. At all times pertinent hereto Philadelphia Indemnity has been involved in the issuance, marketing, selling, and delivery of insurance policies in North Carolina, including policies insuring property, lives, and interests in North Carolina as described in N.C. Gen. Stat. § 58-3-1, and it has adjusted numerous North Carolina insurance claims, including the one described in this action, in the State of North Carolina.

9. The Philadelphia Indemnity insurance policies at issue in this case were delivered in North Carolina to the Named Insured, Kenney Properties, a North Carolina insured.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is

complete diversity of citizenship between all of the Plaintiffs and the Defendant.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims at issue occurred in this district, as is shown hereinafter.

## THE DEFENDANT'S POLICIES

12.    The Defendant issued Policy No. PHPK 1572137 to the Named Insured, Kenney Properties, with effective dates of 11/1/16 to 11/1/17.  This policy had liability limits of $1M per claim and $2M annual aggregate for COVERAGE B liability coverage, and also contained a duty to defend under COVERAGE B liability coverage.

13.    The Defendant issued Policy No. PHPK 1731398 to the Named Insured, Kenney Properties, with effective dates of 11/1/17 to 11/1/18.  This policy had liability limits of $1M per claim and $2M annual aggregate for COVERAGE B liability coverage, and also contained a duty to defend under COVERAGE B liability coverage.

14.    Endorsement PI-GLD-VS (01/08), titled 'GENERAL LIABILITY DELUXE ENDORSEMENT" and described hereinafter, was a part of each of the two above-referenced policies throughout their effective dates.

15.    Kenney Properties paid all applicable premiums and otherwise performed all its obligations as the Named Insured to keep the aforementioned

policies (collectively the "Policies") in full force and effect, and all Plaintiff insureds fully cooperated with Philadelphia Indemnity in its adjustment of the claim arising out of the underlying action described hereinafter.

16. The Plaintiffs performed all of the duties required of them pursuant to the Policies, including all conditions precedent to coverage.

## THE UNDERLYING ACTION AND THE CLAIMS FOR A DEFENSE AND FOR INDEMNITY UNDER THE DEFENDANT'S POLICIES

17. The Plaintiffs, at all pertinent times hereto, have been engaged generally in the business of rental of apartments.

18. On September 4, 2018, Alisa Brogden, then a Wake County, North Carolina resident, filed a class action lawsuit against all the Plaintiffs listed in this action, in Wake County Civil Superior Court ("underlying action"). This action was one of numerous actions filed across the State by Brogden's counsel against various corporations involved generally in the business of the rental of apartments in this State, using similar allegations.

19. A copy of the Complaint in the underlying action, bearing File No. 18 CVS 10880, including its attached internally referenced and incorporated Exhibits 1-6, is attached hereto as Exhibit 1 ("underlying action Complaint"). The contents of that underlying action Complaint are incorporated by reference as if fully set forth herein.

20. The Policies were in effect for consecutive policy periods, which included the time period for the pertinent activities alleged by Alisa Brogden.

21. The underlying action Complaint sought recovery against Kenney Properties, Kenney Realty, Kenney Holdings and Gresham Park, who were collectively the defendants in that underlying action and who also are the Plaintiffs and insureds in this insurance action.

22. The underlying action Complaint, among other remedies, sought recovery for compensatory damages arising out of the institution and prosecution of a "Complaint In Summary Ejectment", which had been previously filed in Wake County with File No. 16 CVM 17859. That action was filed on December 12, 2016 and resulted in a judgment on December 30, 2016 against Alisa Brogden.

23. In the underlying action Alisa Brogden made allegations that the prior legal process used against her and other similarly situated tenants was done willfully, with the existence of an ulterior purpose, and that that litigation involved an act in the use of the process not proper in the regular use of the proceedings, and that it was for an unlawful purpose which was not intended by the law.

24. After suit was thereafter filed in the underlying action by Brogden against the four Plaintiffs herein, Philadelphia Indemnity received prompt notice of the underlying action, including a copy of the Complaint filed in that

action, in an effort by the Plaintiffs to obtain a defense of the underlying action through the insurance coverage issued by Philadelphia Indemnity, through its Policies.

25. Under North Carolina insurance law "in assessing an insurer's duty to defend, 'the ultimate focus…is on the facts that are pled, not how the claims are characterized.'" *State Auto Prop. And Cas. Ins. Co.* 343 F.3d 249, 255 (4th Cir. 2003), quoting *Holtz-Her U.S., Inc. v. U.S. Fid. & Guar. Co.,* 141 N.C. App. 127, 539 S.E.2d 348, 350 (2000).

26. Although not specifically characterized as such, the underlying action Complaint in actuality alleged all of the factual elements of the North Carolina common law tort of abuse of process.

27. Pursuant to applicable North Carolina insurance law, the four corners of the underlying action Complaint squarely presented Philadelphia Indemnity with the decision of whether it would provide a defense for allegations made against the Plaintiffs herein which, if true, would constitute the tort of abuse of process as alleged in the underlying action.

28. Under North Carolina tort law, the tort of abuse of process has been defined as follows:

> In an action for abuse of process it is not necessary to show malice, want of probable cause, or termination of the action; the two essential elements are the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding. The act must be willful.

*Ledford v. Smith,* 212 N.C. 447, 193 S.E. 722, 725 (1937), quoting *Carpenter Co. v. Hanes,* 167 N.C. 551, 83 S.E. 577 (1914). Further, North Carolina law provides as to this tort:

> "An abuse of process consists in its employment or use for some unlawful purpose, which it was not intended by the law to effect, and amounts to a perversion of it."

*Wright v. Harris,* 160 N.C. 542, 76 S.E. 489, 490 (1912).

29.     In the underlying action, among other claims and remedies, the Plaintiff Alicia Brodgen sought damages based on the existence of an ulterior purpose to collect "eviction fees" to which the Defendants in that action allegedly were not entitled, through use of legal process for a summary ejectment.   Further, Alicia Brodgen made allegations that the use of the particular summary ejectment complaint and proceeding was an improper purpose and not a proper use in the regular prosecution of such a proceeding, when used to obtain the particular remedies that were sought in that proceeding.

30.     In the underlying action, among her allegations the Plaintiff Alisa Brogden alleged that attached incorporated Exhibits to that underlying Complaint supported her claims.

31.     After timely receiving a copy of the underlying action Complaint and its attached Exhibits, and receiving a request for a defense from the four defendants in that underlying action (who are the four Plaintiff Insureds in

this action), Philadelphia Indemnity caused a letter to be written to the Plaintiff Insureds in this action, completely denying coverage.

32. The letter denying coverage quoted policy language purporting to comprehensively address who was an "Insured" as that term was alleged to be defined in the Policies as it related to the underlying action, but Philadelphia Indemnity failed to quote applicable language in the Policies that defined all four of the Plaintiffs herein to hold the status of insureds.

33. The Plaintiff, Kenney Properties, was the Named Insured in the Policies. The other three Plaintiffs were "Insureds" because the underlying Complaint alleged they each allegedly engaged in conduct that triggered policy coverage for them as "real estate managers" as specifically set forth in the "WHO IS AN INSURED" Section in each of the Policies, when compared to the allegations in the underlying action Complaint.

34. Additionally, the language quoted in the Defendant's denial letter as to who was an "Insured" failed to include broadened coverage language, added by way of endorsement, for entities which the Named Insured controlled or actively managed, which would act as another separate ground to trigger coverage for a duty to defend for each of the Plaintiffs herein, when compared to the allegations in the underlying action Complaint.

35. In its denial letter, Philadelphia Indemnity also inaccurately quoted the definition of a "personal and advertising injury" that would afford

coverage pursuant to COVERAGE B of its Liability Coverage in each of the Policies, as modified by Endorsement PI-GLD-VS (01/08) to the policies.

36. The denial letter to the Plaintiffs herein recited the definition of a "personal and advertising injury" that listed a number of common law torts and other causes of action as being included, but omitted "abuse of process" in its list of covered torts when it purported to exactly quote the definition of a "personal and advertising injury" defined at definition subparagraph 14 b. in the Policies.

37. The Plaintiffs, through their designated representative at that time, responded to this denial letter, a denial letter which relied on an inaccurate quotation of the definition of "personal and advertising injury" and did not include the specifically enumerated tort of "abuse of process" as added into definition 14 b. of "personal and advertising injury" by endorsement.

38. The standard insurance industry Insurance Services Office language for a general liability policy did not list "abuse of process" as a separate tort in the standardized definition of "personal and advertising injury."

39. For a time after receipt of the denial letter, Plaintiff's counsel, relying on the quotation of applicable policy language in that letter, failed to appreciate the denial letter contained a key omission from the list of covered torts actually found in the definition of "personal and advertising injury" in the

Policies, as amended by endorsement. Plaintiffs argued that "abuse of process" should nonetheless be considered a "personal and advertising injury" even though believing (through reliance on Philadelphia Indemnity's assertion of the applicable policy language) that "abuse of process" was not itself directly enumerated as an independent tort in the list of covered torts, instead contending it should be considered a covered tort as a subpart of the listed covered tort of "malicious prosecution."

40.    Various representatives of the Plaintiffs for over a year sought a defense from Philadelphia Indemnity in the underlying action, with numerous further communications to Philadelphia Indemnity.

41.    The Plaintiffs, through their designated legal representative at that time, made multiple requests for a defense. Philadelphia Indemnity exhibited a pattern of not timely responding to these communications about the underlying action, causing further delay in the investigation of the duty to defend, all the while Philadelphia Indemnity not in any way providing a defense in the underlying action.

42.    Further, Philadelphia Indemnity was provided full access to the pleadings and other court filings and discovery generated by the parties in the underlying action, which if reasonably investigated (as Philadelphia Indemnity was required to do), would have provided a further basis for triggering coverage for a defense of the Plaintiffs, based on North Carolina's

well-established test for measuring a duty to defend. Philadelphia Indemnity did not timely or reasonably investigate the underlying action, although urged to do so by the Plaintiffs.

43. On June 12, 2020, in summing up the consistently improper non-responsive claims handling attitude exhibited by Philadelphia Indemnity to that date, Plaintiffs' designated representative (with consent to contact Philadelphia Indemnity directly) wrote in pertinent part to the Defendant Philadelphia Indemnity:

> Once again, you have shown that Philadelphia is purposefully ignoring its policyholder, Kenney. This is a violation of North Carolina's claims handling statute.
>
> After months and months of countless attempts to communicate with Philadelphia through its counsel, …said he would respond to me "shortly" on May 21st. I have attached that email. Neither he nor Philadelphia responded to me.
>
> Failing to get any response from Philadelphia through counsel, I emailed you directly on June 4th (below). I did not get a response from you. I called you on June 9th and 10th, and did not receive a call back. I emailed you on June 11th. Your response on behalf of Philadelphia was to defer to…Philadelphia Indemnity's counsel. I have attached that email.
>
> After Philadelphia put the ball back in…Philadelphia Indemnity's counsel's court on June 11th, he sent the email below, which you at Philadelphia were copied on. …Philadelphia Indemnity's counsel said he would respond on behalf of Philadelphia "today in detail." But he did not respond to me yesterday in any way. He did not explain Philadelphia's perspective as to the applicable law. Instead, once again, Philadelphia ignored its policyholder Kenney.

Philadelphia is whipsawing its policyholder in violation of North Carolina bad faith law.

I repeat and reiterate Kenney's demand: that Philadelphia immediately agree to fully pay any reasonable sum up to its policy limits to settle this case, that you fully reimburse Kenney for its post-tender defense costs, and that you immediately assume your defense obligation without reservations.

44.     After that communication was sent to Philadelphia Indemnity through its representative, in response a legal representative of Philadelphia Indemnity sent a letter to Plaintiffs' counsel again denying the claim, and again improperly asserting that three of the four insureds were not covered pursuant to the policies because they were not "insureds" pursuant to the language of the Policies.  Philadelphia Indemnity also again failed to identify the prior misquotation of the definition of "personal and advertising injury" which did not include "abuse of process" as a specifically enumerated covered tort pursuant to paragraph 14 b. as revised for SECTION V – DEFINITIONS, pursuant to an amendment to the policy language in Endorsement PI-GLD-VS (01/08).

45.     Throughout this time the Plaintiffs were in good faith incurring considerable defense costs defending the underlying action.

46.     In July of 2020, the Plaintiffs' legal representative at that time noticed that there was a special endorsement contained in the Policies, titled "GENERAL LIABILITY DELUXE ENDORSEMENT" and numbered PI-GLD-

VS (01/08), which among other things, modified and expanded the definition of "personal and advertising injury" under subparagraph 14 b. from "malicious prosecution" to "malicious prosecution <u>and abuse of process</u>." (emphasis added)

47.    Additionally, as to the definition of "insureds", this same endorsement (Endorsement PI-GLD-VS (01/08)) "broadened" the "Named Insured" definition to include "[a]ny organization and subsidiary thereof which you control and actively manage on the effective date of this Coverage Part [i.e., as of the effective date of each of the Defendant's Policies]."

48.    The underlying action Complaint in any event also specifically pleaded allegations of fact as to each insured so as to meet the policy definition of a "real estate manager" which would trigger coverage for each of them pursuant to Section II, subparagraph 2.b.

49.    The underlying action Complaint, among other things, alleged, "[u]pon information and belief, Defendants [i.e., the Plaintiffs herein] are the only property management company(ies) engaged in the work and business of Autumn Pointe apartments and other North Carolina properties."

50.    The underlying action Complaint further alleged, "[u]pon information and belief, Defendants [i.e., the Plaintiffs herein] are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the *alter ego* of the other.  Upon information and belief, Defendants (a) own each other's assets, equities, and

debts, (b) employs each other's persons or entities to operate the residential apartments in North Carolina, and (c) are engaged in whole or in party [sic] in the management of one another with respect to the operation of residential apartments in North Carolina within the scope of their authority." The underlying action Complaint also alleged "[w]ith respect to all actions and decisions to this action, Defendants have operated as a single entity."

51. The underlying action Complaint had sufficient pleaded allegations to trigger a duty to defend the three Plaintiffs, Kenney Holdings, Kenney Realty and Gresham Park as "Named Insureds" pursuant to the amendatory endorsement language, in addition to the original Named Insured, Kenney Properties.

52. This broader definition of a Named Insured was omitted from the Philadelphia Indemnity's first denial letter, as well as in subsequent communications on behalf of Philadelphia Indemnity denying coverage. Also, the definition of an "Insured" included Kenney Holdings, Kenney Realty and Gresham Park as "real estate managers" which was also important policy language, and was found in the main policy insuring agreement, rather than in the "Deluxe Endorsement" was omitted from Philadelphia Indemnity's communications denying coverage based on those parties not being insureds.

53. On July 23, 2020, after appreciating the amending language contained in Endorsement PI-GLD-VS (01/08), the Plaintiffs identified and

gave notice to Philadelphia Indemnity of its failure to include in its quoted definition of "personal and advertising injury" the specifically enumerated tort of "abuse of process", which was inappropriately omitted from Philadelphia Indemnity's prior recitation of the operative policy language.

54.     In the same communication, on July 23, 2020, the Plaintiffs again renewed their demand for a defense, and also gave notice of their intention to attempt to settle the underlying action, if the Defendant Philadelphia Indemnity did not participate in the defense, and indicated that such a settlement "will likely take a large sum of money."

55.     The allegations, as pleaded in the underlying action Complaint contained facts describing all four of the Plaintiffs herein as insureds, and supporting a cause of action for the North Carolina tort of abuse of process, as did the readily available pleadings and other court filings and discovery documentation associated with that action, to which Philadelphia Indemnity had full access.

56.     Prior to July 23, 2020, Philadelphia Indemnity knew or should have known that the Policies provided coverage to the Plaintiffs for abuse of process, and Philadelphia Indemnity should have at a minimum provided a defense to the underlying action to all four Plaintiffs under a reservation of rights.  Upon information and belief, one or more claims managers of the Defendant either helped draft or approved the inaccurate contents of the initial

denial letter sent to Kenney Properties, as well as subsequent communications to the Plaintiffs herein.

57. Under applicable North Carolina insurance law, in any event, an insurer is deemed to be on notice of the contents of its files, including its policies, whether its employees read them or not, in responding to a claim.

58. As of July 23, 2020, Philadelphia Indemnity was on actual written notice from the Plaintiffs that the Policies specifically listed "abuse of process" as a covered tort, in contrast to the language of Philadelphia Indemnity's denial letter.

59. After actual notice of the language found in this amendatory endorsement was provided by its insureds on July 23, 2020, all actions thereafter by Philadelphia Indemnity in refusing to provide a defense were undertaken with actual specific knowledge by its claims managers on that insurance claim that the policy covered abuse of process, and that Philadelphia Indemnity had not quoted pertinent policy language. The continued denial of coverage at that point constituted a denial with specific intent and malice against the Plaintiffs, who were compelled to themselves continue to pay for a defense and to later fund a settlement of the underlying action.

60. After receiving the July 23, 2020, notice through its representative, Philadelphia Indemnity took no steps to respond to the information concerning its misquote of the endorsement-modified definition of

"personal and advertising injury" or to acknowledge the existence of the modified definition of "Named Insureds" also found in the same endorsement to the Defendant's policies, or that the policies covered "real estate managers" and otherwise did nothing to address its prior incorrect and incomplete statements of the actual policy language, or address its position on coverage or participate in the defense or the settlement of the underlying action.

61. The Plaintiffs, after lengthy arms-length negotiations, resolved the case by way of a reasonable settlement, which was approved by the Court in the underlying action.

62. A copy of the court findings as to the activities undertaken by the parties in the underlying action and as to the settlement are found in the Court's Order filed on January 15, 2021, attached hereto as Exhibit 2, and incorporated by reference.

63. The settlement was "in all respects fair, reasonable, and adequate" as found by the Court.

64. Pursuant to the settlement, payments were made to fulfill the Defendants' settlement obligations by paying a total of $500,000 as follows:

> (a) Kenney Realty paid $30,000 to Computershare AAF KCC Class Action as the administrative cost to fully administer the notice plan and effectuate the payment of the settlement to the class members, on November 24, 2020.

(b)  Kenney Properties paid $301,690.82 to Computershare AAF KCC Class Action on January 21, 2020.

(c)  Kenney Properties paid $168,309.18 to Whitfield Bryson LLP on January 21, 2020.

65.  The entire defense of the underlying action, as well as the full settlement was undertaken without any assistance or offer of participation or payment in any fashion funded or indemnified by Philadelphia Indemnity.

66.  Philadelphia Indemnity never responded to the July 23, 2020, communication since it was sent, even to challenge the policy language brought to its attention therein.

67.  Philadelphia Indemnity intentionally engaged in an improper course of conduct specifically intended to avoid payment for a defense, which was due pursuant to the Policy terms.

## I.  COUNT ONE – BREACH OF CONTRACT

68.  Paragraphs 1 through 67 of the Complaint are incorporated by reference as if fully set forth herein.

69.  The Policy language was triggered, based on the allegations of fact and also by way of related file materials allegedly supporting the tort of "abuse of process."

70.  Philadelphia Indemnity has breached its insurance contract obligations with each Plaintiff to provide a defense in the underlying action.

71. The Plaintiffs gave Philadelphia Indemnity timely notice of the filing and service of the underlying action Complaint. Similarly, after multiple attempts over a long period of time to obtain a defense, Plaintiffs gave Defendant ample notice of Plaintiffs' intention to attempt to settle the underlying action well before it was settled.

72. Philadelphia Indemnity declined to in any way participate in the defense or settlement of the underlying action. By its improper denial of all coverage under the policies, the Defendant waived any policy conditions relating to Philadelphia Indemnity's right to approve any settlement, and it is also estopped to apply its right to approve any liability settlement entered into by the Plaintiffs, by Philadelphia Indemnity's actions as set forth herein.

73. Under applicable North Carolina insurance law, when the duty to defend is provided through an insurer's policy, and a refusal to defend is unjustified, the insurer "…has obligated itself to pay the amount and costs of a reasonable settlement." *Naddeo v. Allstate Ins. Co.,* 139 N.C. App. 311, 321, 533, S.E.2d 501, 507 (2000).

74. Under applicable North Carolina insurance law, "[i]f the claim is within the coverage of the policy, the insurer's refusal to defend is unjustified even if it is based upon an honest but mistaken belief that the claim is not covered." *Duke University v. St. Paul Fire and Marine Ins. Co.,* 96 N.C. App. 635, 637, 386 S.E.2d 762, 764 (1990).

75.     In the instant case, the duty to defend as well as the coverage for indemnity to the Plaintiffs for the settlement that was paid, are within the scope of the policy insuring agreements and are also within the stated liability limits of the Defendant's Policies.

76.     The Plaintiffs pray for compensatory damages from Philadelphia Indemnity at a sum in excess of $75,000 for breach of contract based on Philadelphia Indemnity's failure to pay its legal obligations to provide a defense and also to provide indemnity, together with legal interest, to be calculated pursuant to N.C. Gen. Stat. §24-5(a) from the date of each separate applicable breach by Philadelphia Indemnity, through the various payments incurred by the Plaintiffs herein over the course of the underlying action.

**II.    COUNT TWO – RECOVERY PURSUANT TO N.C. GEN. STAT. § 75-1.1, INCLUDING FOR VIOLATION OF THE UNFAIR CLAIMS SETTLEMENT PRACTICES STATUTE, N.C. GEN. STAT. § 58-63-15(11).**

77.     Paragraphs 1 through 76 of the Complaint are incorporated by reference as if fully set forth herein.

78.     Philadelphia Indemnity declined to provide a defense or fulfill its duty to indemnify at any time from the first tender of the underlying action to Philadelphia Indemnity, through to the present, even after actual notice of its misquote of the operative policy language relating to the tort of abuse of

process on July 23, 2020, and through its failure to acknowledge all four Plaintiffs were covered insureds.

79. Philadelphia Indemnity has intentionally engaged in activities proscribed by the North Carolina Unfair Claims Settlement Practices Act, by, among other things:

     a.    Mispresenting pertinent facts or insurance policy provisions relating to coverage at issue, pursuant to subparagraph a of N.C. Gen. Stat. §58-63-15(11).

     b.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, pursuant to subparagraph b of N.C. Gen. Stat. §58-63-15 (11).

     c.    Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, pursuant to subparagraph c of N.C. Gen. Stat. §58-63-15 (11).

     d.    Refusing to pay claims without conducting a reasonable investigation based upon all available information, pursuant to subparagraph d of N.C. Gen. Stat. §58-63-15 (11).

     e.    Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, pursuant to subparagraph f of N.C. Gen. Stat. § 58-63-15(11).

     f.    Failing to promptly provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, pursuant to subparagraph n of N.C. Gen. Stat. § 58-63-15(11).

80. Philadelphia Indemnity's insurance-related activity as to the Policies was conduct "in or affecting commerce" within the State of North Carolina, pursuant to N.C. Gen. Stat. § 75-1.1(a).

81.     Philadelphia Indemnity's activities and any of them constituted unfair or deceptive acts or practices pursuant to N.C. Gen. Stat. § 75-1.1(a), by way of violations of N.C. Gen. Stat. § 58-63-15(11) and as otherwise set forth herein.

82.     Recently, in reviewing a remarkably similar pattern of conduct by the Defendant Philadelphia Indemnity, a North Carolina court considered a denial letter improperly citing policy provisions that were superseded by endorsement, in denying a portion of an insurance claim to an insured.  That activity by Philadelphia Indemnity occurred approximately 8 months before the initial denial letter was issued to Kenney Properties in this action, improperly citing policy provisions that were superseded by endorsement in denying coverage.  The Court found the activity by Philadelphia Indemnity in that action constituted a violation of N.C. Gen. Stat. §75-16.  See *DENC, LLC v. Philadelphia Indemnity Ins. Co.,* 454 F.Supp.3d 552 (M.D.N.C. 2020) (appeal filed 6/10/20).

83.     Philadelphia Indemnity's improper handling and denial of the Plaintiffs' claim has directly proximately caused damages to the Plaintiffs, both for the costs of defense and also for the costs of a reasonable settlement. This conduct by the Defendant has compelled the Plaintiffs to file this suit to obtain payments they should not have been compelled by Philadelphia

Indemnity to make. The funding of the defense and of the settlement has caused significant financial damage to the Plaintiffs.

84. The conduct of Philadelphia Indemnity in dealing with its insureds manifested an inequitable assertion of power and position.

85. The conduct of Philadelphia Indemnity in denying a defense and indemnity was oppressive and substantially injurious to its insureds.

86. Upon information and belief, the conduct of the Defendant in its adjustment of this claim, was done in direct violation of its own internal claims handling standards that were in effect at the time the above-described conduct was undertaken.

87. The activities of the claims managers of Philadelphia Indemnity relating to this claim were unethical, immoral, unscrupulous and directly injurious to its insureds herein.

88. The statutory violations, and each of them, constitute unfair claims settlement practice violations by Philadelphia Indemnity, pursuant to N.C. Gen. Stat. § 58-63-15(11).

89. These enumerated statutory violations, as well as the other inappropriate activity described hereinabove, constitute a series of unfair acts or practices by Philadelphia Indemnity in handling the subject claim, which proximately caused injury to its insureds, in violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

90.     The Plaintiffs seek compensatory damages pursuant to N.C. Gen. Stat. § 75-1.1, and N.C. Gen. Stat. § 75-16, and the Plaintiffs pray that the damages be trebled due to Philadelphia Indemnity's unfair acts and practices in the handling of the subject insurance claim.

WHEREFORE, the Plaintiffs pray for recovery from the Defendant as follows:

1.      That the Plaintiffs have and recover compensatory damages at a sum in excess of $75,000.

2.      That the Plaintiffs have and recover prejudgment interest pursuant to N.C. Gen. Stat. § 24-5(a).

3.      That the Plaintiffs have and recover treble damages pursuant to N.C. Gen. Stat. § 75-16.

4.      That the Plaintiffs have and recover their attorney's fees in pursuing this action pursuant to N.C. Gen. Stat. § 75-16.1.

5.      That the Plaintiffs have and recover their costs in this action, including court costs and fees, as determined by the Court.

6.      That the Plaintiffs have a trial by jury on all issues of fact so triable herein.

7.      For such other and further relief as the Court may deem just and proper.

This the 27th day of July, 2021.

CRANFILL SUMNER LLP

By: /s/Theodore B. Smyth
Theodore B. Smyth
N.C. State Bar No: 10045
P.O. Box 27808
Raleigh, NC 27611-7808
Telephone: 919-828-5100
Facsimile: 919-828-2277
Email: tsmyth@cshlaw.com
Attorneys for Plaintiffs Kenney
Properties, Inc., Kenney Holdings, LLC,
Kenney Realty Services, LLC and
Gresham Park, LLC d/b/a Autumn Pointe
Apartments